**In re URETHANE ANTITRUST LITIGATION.**

No. 04–MD–1616–JWL.

United States District Court,
D. Kansas.

Nov. 10, 2005.

George A. Hanson, Norman E. Siegel, Stueve Siegel Hanson Woody LLP, Kansas City, MO, Roy Morrow Bell, Jason S. Hartley, Timothy P. Irving, Ross, Dixon & Bell, LLP, San Diego, CA, Steven A. Kanner, Douglas A. Millen, William H. London, Much Shelist Freed Denenberg Ament & Rubenstein PC, Gary Specks, Kaplan Fox, Mary Jane Edelstein Fait, Wolf Haldenstein Adler Freeman & Herz LLP, Chicago, IL, Susan G. Kupfer, Glancy Binkow & Goldberg LLP, Michael P. Lehmann, Thomas Patrick Dove, Alex C. Turan, Frederick P. Furth, Julio Ramos, The Furth Firm LLP, Eric B. Fastiff, Joseph R. Saveri, Michele Chickerell Jackson, Lieff, Cabraser, Heimann & Berstein, LLP, Cadio Zirpoli, Geoffrey C. Rushing, Guido Saveri, Richard Alexander Saveri, Saveri & Saveri, Inc., Craig C. Corbitt, Judith A. Shimm, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Francis O. Scarpulla, Law Office of Francis O. Scarpulla, Joseph M. Patane, Law Office of Joseph M. Patane, Mario Nunzio Alioto, Trump Alioto Trump & Prescott LLP, Ronald D. Foreman, Foreman & Brasso, Diana K. Kim, Joseph M. Barton, Steven O. Sidener, Paul F. Bennett, Gold, Bennett, Cera & Sidener, LLP, San Francisco, CA, W. Joseph Bruckner, Yvonne M. Flaherty, Lockridge Grindal Nauen, PLLP, Minneapolis, MN, Andrew Bullion, Anthony J. Bolognese, Joshua H. Grabar, Bolognese & Associates, LLC, Steven J. Greenfogel, Meredith, Cohen Greenfogel & Skirnick, P.C., David H. Weinstein, Steven A. Asher, Weinstein Kitchenoff & Asher LLC, Howard

J. Sedran, Levin, Fishbein, Sedran & Berman, Andrew B. Sacks, John K. Weston, Sacks & Weston, LLC, Ira Neil Richards, Trujillo Rodriguez & Richards LLC, Allen D. Black, Gerard A. Dever, Roberta D. Liebenberg, Fine, Kaplan and Black, RPC, Philadelphia, PA, Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, Myroslaw Smorodsky, Law Offices of Myroslaw Smorodsky, Rutherford, NY, Daniel R. Karon, Weinstein Kitchenoff Scarlato Karon Goldman, Cleveland, OH, Jason A. Zweig, Matthew P. McCahill, Richard J. Kilsheimer, Robert N. Kaplan, Kaplan Fox & Kilsheimer, LLP, Fred Taylor Isquith, Wolf Haldensteinadler Freeman & Herz LLP, New York, NY, William J. Pinilis, Pinilis Halpern, LLP, Morristown, NJ, Angela K. Drake, Lowther Johnson, Attorneys at Law, LLC, Springfield, MO, Peter D. St. Phillip, Jr., Lowey, Dannenberg, Bemporad & Selinger, PC, White Plains, NY, James Belford Brown, Herum Crabtree Brown, Stockton, CA, James V. Demera, III, Mullen Sullivan & Newton, LLP, Lodi, CA, Clinton P. Walker, Roger M. Schrimp, Damrell, Nelson, Schrimp, Pallios, Pache, Modesto, CA, Lionel Z. Glancy, Michael M. Goldberg, Peter A. Binkow, Glancy Binkow & Goldberg LLP, Los Angeles, CA, Anne White, White & Goldstein, LLC, Jenkintown, PA, Dianne M. Nast, Rodanast, P.C., Lancaster, PA, Krishna Narine, Schiffrin & Barroway LLC, Radnor, PA, Lisa J. Rodriguez, Donna Siegel Moffa, Trujillo Rodriguez & Richards LLP, John J. McGrath, McKissock & Hoffman, PC, Haddonfield, NJ, Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, St. Paul, MN, Allyn Z. Lite, Bruce D. Greenberg, Joseph J. DePalma, Michael E. Patunas, Lite, DePalma, Greenberg & Rivas LLC, Newark, NJ, Arthur N. Bailey, Arthur N. Bailey & Associates, Jamestown, NY, Christopher J. Cormier, Justine J. Kaiser, Michael D. Hausfeld, Stewart M. Weltman, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Isaac L. Diel, Law Offices of Isaac L. Diel, Bonner Springs, KS, Joseph Goldberg, Freedman, Boyd, Daniels, Hollander & Goldberg, PA, Albuquerque, NM, Robert W. Coykendall, Tim J. Moore, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Roger N. Walter, Morris, Laing, Evans, Brock & Kennedy, Chtd., Topeka, KS, for Plaintiffs.

Andrew Stanley Marovitz, Jason Brett Fliegel, Terri A. Mazur, Mayer, Brown, Rowe & Maw LLP, Joan M. Meyers, Mark V. Chester, Johnson & Colmar, Chicago, IL, David F. Oliver, Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP, James R. Eiszner, Joseph G. Matye, Shook, Hardy & Bacon L.L.P., Floyd R. Finch, Jr., Shelley A. Runion, Blackwell Sanders Peper Martin LLP, Brian R. Markley, Stinson Morrison Hecker LLP, Charles W. German, Matthew P. Hamner, Phillip G. Greenfield, Rouse Hendricks German May PC, Kansas City, MO, Caroline N. Mitchell, J. Andrew Read, William V. O'Reilly, Jones Day, Benjamin G. Bradshaw, Ian Simmons, O'Melveny & Myers, LLP, G. Hamilton Loeb, Jeremy P. Evans, Paul, Hastings, Janofsky & Walker, LLP, Erica Mueller, Jennifer Quinn–Barabanov, Robert Fleishman, Steptoe & Johnson LLP, Washington, DC, Adam T. Suroff, W. Joseph Hatley, Lathrop & Gage, LC, Overland Park, KS, Ira H. Raphaelson, Michael F. Tubach, O'Melveny & Myers, LLP, San Francisco, CA, James S. Jardine, John W. Mackey, Justin T. Togh, Ray, Quinney & Nebeker, Salt Lake City, UT, Ian N. Feinberg, Mayer, Brown, Rowe & Maw, LLP, Palo Alto, CA, William C. Cagney, Windels, Marx, Lane & Mittendorf, LLP, New Brunswick, NJ, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This multidistrict litigation consists of numerous putative class action lawsuits arising from an alleged antitrust price fixing conspiracy among urethane chemical producers. Within this proceeding the court has consolidated two separate sets of cases—the Polyester Polyol cases and the Polyether Polyol cases. This matter is currently before the court on the Polyester Polyol plaintiffs' motion for leave to amend their consolidated complaint (Doc. 132). By way of this motion, plaintiffs seek to amend their complaint to redefine the relevant product definition, to add defendants, to expand the proposed class period, and to provide further factual detail regarding the alleged price fixing conspiracy.

For the reasons explained below, this motion is denied.

## BACKGROUND

On August 23, 2004, the Judicial Panel on Multidistrict Litigation (JPML) entered an order transferring numerous urethane antitrust cases to this court. The court consolidated these cases and, on October 15, 2004, convened the initial scheduling conference. The court appointed co-lead and liaison counsel for the parties. Days later, the court entered the first scheduling order in this multidistrict litigation. Pursuant to this scheduling order, plaintiffs filed their Consolidated Class Action Complaint (Doc. 39) on November 19, 2004. When they did so, they voluntarily dismissed without prejudice claims that the various individual plaintiffs had previously asserted against defendants Huntsman International LLC, Huntsman LLC, Rubicon LLC, The Dow Chemical Company, BASF Corporation, and BASF AG. Plaintiffs elected to limit their complaint to assert claims only against defendants Uniroyal Chemical Company, Inc. and Chemtura Corporation f/k/a Crompton Corporation (collectively, the Chemtura defendants) and Bayer AG, Bayer Corporation, Bayer Material-Science, Rhein Chemie Rheinau GmbH, and Rhein Chemie Corporation (collectively, the Bayer defendants). The consolidated complaint alleges that the Chemtura and Bayer defendants engaged in an unlawful price fixing conspiracy with respect to urethanes and urethane chemicals, which is defined to include polyester polyols and related polyurethane systems. The parties commenced discovery on February 15, 2005, and have been engaged in discovery since. The deadline for plaintiffs' motion for class certification is less than a month away on December 2, 2005.

In June of 2005, the JPML ordered the transfer of three additional cases, *Seegott Holdings, Inc. v. Bayer AG*, Case No. 2:04–5850 (D.N.J.), *Alco Industries, Inc. v. Bayer AG*, Case No. 2:05–789 (D.N.J.), and *RBX Industries, Inc. v. Dow Chemical Co.*, No. 2:05–1788 (D.N.J.). Based upon the parties' submissions to the MDL panel, the court was aware of the arguably differing nature between the products at issue in the originally transferred cases and the then-newly transferred *Seegott, Alco,* and *RBX* cases. On August 29, 2005, the court convened a status conference to discuss with the parties how to integrate the more recently transferred cases into this proceeding. Ultimately, the court ruled that the originally transferred cases would remain consolidated for pretrial purposes and would be referred to as the Polyester Polyol cases. The court also consolidated for pretrial purposes the *Seegott, Alco,* and *RBX* cases along with a fourth case from this district, and ruled that this set of cases would be referred to as the Polyether Polyol cases. The court ruled that it would not, however, consolidate the two groups of cases. Instead, the two sets of cases would proceed on separate tracks for scheduling purposes. The court appointed separate co-lead and liaison counsel for the Polyether Polyol cases. Additionally, the court stated that if at some point in time either group of plaintiffs wished to expand or alter their allegations in a way that would encroach on the other group's claims, doing so would be allowed only by leave of court.

On September 23, 2005, the Polyether Polyol plaintiffs filed their Consolidated Amended Complaint (Doc. 131) in the Polyether Polyol cases. This complaint alleges a price fixing conspiracy with respect to polyether polyol products, which is defined to include polyether polyols, methyl diphenyl diisocyanate (MDI), and toluene diiocyanate (TDI). The defendants named in this amended complaint include some of the same Bayer defendants as in the Polyester Polyol cases as well as Lyondell Chemical Company and the BASF, Dow, and Huntsman defendants against whom the Polyester Polyol plaintiffs previously dismissed their claims.

On the same day that the Polyether Polyol plaintiffs filed their Consolidated Amended Complaint, the plaintiffs in the Polyester Polyol cases filed the motion to amend that is currently at issue. By way of this motion, the Polyester Polyol plaintiffs seek to amend their complaint in essentially four different ways. First, they seek to change the relevant product definition of urethanes and urethane chemicals. Second, they seek to reassert claims against BASF, Dow, and

Huntsman. Third, they seek to expand the proposed class period to begin on July 1, 1995, instead of January 1, 1998. Fourth, they seek to provide further factual detail regarding the alleged price fixing conspiracy. They contend that these amendments are necessary to reflect information they obtained during the early stages of discovery.

## DISCUSSION

■ The court first wishes to clarify an important threshold matter with respect to plaintiffs' request to change the relevant product definition and to add defendants. That is, the law governing typical motions to amend—including *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), and its progeny—does not apply to this aspect of plaintiffs' motion. In *Foman*, the Supreme Court held that "in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182, 83 S.Ct. 227. But, importantly, this principle rests on the rationale that a party "ought to be afforded an opportunity to test his claim on the merits." *Id.* Therefore, denial of leave to amend on the basis of a technicality is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits." *Id.* at 181, 83 S.Ct. 227. These concerns are not implicated by the proposed amendment sought by plaintiffs with respect to the relevant product definition and the addition of defendants. As defendant Chemtura points out and the Polyester Polyol plaintiffs do not dispute, "the proposed amendments do not vindicate *any* legal rights of any putative claimants that are otherwise not being pursued in the Polyether [Polyol] case." (Chemtura Corp.'s Mem. in Opp'n (Doc. 138), at 2 (emphasis in original).) Thus, the issue presented here is whether particular claims should be managed under the umbrella of the Polyester Polyol cases or the Polyether Polyol cases. As such, the court is certainly mindful that leave to amend is to be "freely given when justice so requires." Fed.

R.Civ.P. 15(a). But, the court will evaluate whether leave should be granted with an eye toward determining the most "just, speedy, and inexpensive determination" of the parties' claims. Fed.R.Civ.P. 1; *cf.* 28 U.S.C. § 1407(a) (noting that multidistrict litigation is warranted based upon a determination by the JPML that such transfers "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions").

■ The Polyester Polyol plaintiffs attempt to downplay the significance of their proposed revised product definition inasmuch as they state they are merely seeking to "clarify" that their product definition always has included the isocyanates MDI and TDI. The court disagrees. The current complaint defines the relevant market as "Urethanes and Urethane Chemicals" in the United States. (Consol. Class Action Compl. (Doc. 39), ¶ 54, at 16.) In turn, it defines Urethanes and Urethane Chemicals as "polyester polyols and related polyurethane systems." (*Id.* ¶ 6, at 4.) It further defines polyester polyols as "macroglycols that are combined with isocyanates (including toluene diisocyanate (TDI), methylene dyphenyldiisocyanate (MDI), and other isocyanates) to produce and manufacture polyurethane polymers." (*Id.* ¶ 7, at 4.) In other words, MDI and TDI are relevant products only insofar as they are combined with macroglycols to produce polyester polyols. Similarly, the complaint defines polyurethane systems to "include a polyol, an isocyanate, and other substances or materials which, when mixed together, react to form a polyurethane or polyisocyanurate polymer." (*Id.* ¶ 8, at 5.) But polyurethane systems are included in the definition of Urethanes and Urethane Chemicals only insofar as they are "related" to polyester polyols. Thus, the original complaint does not allege a price fixing conspiracy with respect to MDI and TDI as standalone products. Rather, it alleges a price fixing conspiracy with respect to MDI and TDI only insofar as they form a part of a polyester polyol or a polyurethane system that is related to polyester polyols. In contrast, the proposed amended complaint seeks to define the term "Urethanes and Urethane

Chemicals" as "polyester polyols, and isocyanates including, but not limited to, methylene dyphenyldiisocyanate (MDI), toluene diisocyanate (TDI), and polyurethane products that include polyester polyols and isocyanates." (Proposed First Amended Consol Class Action Compl., ¶ 6, at 2.) By its plain terms, this proposed definition expands the relevant products to include MDI and TDI as stand-alone products. The Polyether Polyol plaintiffs already allege a price-fixing conspiracy with respect to MDI and TDI as stand-alone products. Thus, the Polyester Polyol plaintiffs are seeking to encroach on the Polyether Polyol plaintiffs' claims.

The court is unpersuaded based on the present state of the record that circumstances have changed so significantly as to warrant reconsideration of the court's "no encroachment" ruling from the status conference on August 29, 2005. At that time, it was the court's understanding based on information the parties submitted to the court prior to the status conference that polyester polyol systems and polyether polyol systems essentially involve different types of urethane products with different uses, that they involve different product markets, that they are sold by different groups of producers, and that the alleged antitrust price fixing conspiracy between Bayer and Crompton in the Polyester Polyol cases is separate and distinct from the broader conspiracy alleged by the Polyether Polyol plaintiffs. Certainly, the two sets of cases involve overlapping products to the extent that they both include MDI and TDI. These products are at issue as part of the polyester polyol systems in the Polyester Polyol cases and they are at issue in the Polyether Polyol cases as stand-alone products. Because of this, consolidation of these two sets of cases in one proceeding may ultimately lead to enhanced convenience and efficiency for the parties and the court. But, based on the present state of the record presented by the Polyester Polyol plaintiffs and the fairly generalized allegations in both cases concerning the scope of the relevant markets, *see* Manual for Complex Litigation § 30.1, at 521 (4th ed.2004) (noting that defi-

nition of the relevant market may be critical in antitrust cases), the court is simply unpersuaded that the broader conspiracy sought to be alleged by the Polyester Polyol plaintiffs is any more likely to have existed than the two separate conspiracies that are currently alleged by the two groups of plaintiffs. Thus, the court is unwilling at this time to retreat from its original stance on this issue.

The court is also persuaded that the amendment should not be permitted because of the predicament this would create for Chemtura Corporation. Chemtura is one of the largest producers of isocyanates (e.g., MDI and TDI) in the United States. Chemtura is not a defendant in the Polyether Polyol cases, but it is a defendant in the Polyester Polyol cases. If the court were to allow the Polyester Polyol plaintiffs to amend their complaint to include MDI and TDI as stand-alone products in the Polyester Polyol cases, Chemtura would be placed in the difficult position of being both a defendant and a putative class member in the Polyester Polyol cases.[1] The Polyester Polyol plaintiffs propose to remedy this conflict by simply omitting all defendants from the proposed plaintiff class definition. This remedy is wholly unjust to Chemtura, which would presumably be one of the largest beneficiaries of the putative plaintiff class if it is ultimately proven that a price fixing conspiracy existed with respect to MDI and TDI. Thus, the fact that the Polyester Polyol plaintiffs would suggest such a remedy raises concerns that they may be more interested in winning this turf war than they are in the best interests of the class of plaintiffs they are seeking to represent. In any event, the court can envision that this potential conflict could raise logistical problems in the future of this litigation if the court were to allow the Polyester Polyol plaintiffs to amend their complaint as they seek to do. The alternative approach the court has already adopted appears to be the more prudent course of action because it does not give rise to any such conflict.

Ultimately, the court is unpersuaded that the Polyester Polyol plaintiffs should be per-

---

1. This seemingly illogical result illustrates the court's skepticism about the likelihood of such a

broad conspiracy.

mitted to amend their complaint to broaden the scope of the product definition because doing so would be inefficient from a case management perspective and would do nothing to further the just, speedy, and inexpensive determination of the parties' claims. The Polyester Polyol cases are much further along than the Polyether Polyol cases. The court finds it significant that every other party to this litigation opposes the Polyester Polyol plaintiffs' attempt to expand the scope of their complaint. The Polyether Polyol plaintiffs oppose the motion because it violates the court's "no encroachment" rule. Bayer persuasively argues that the filing of largely overlapping claims by the two groups will cause significant confusion, duplication of efforts, and inefficiency for the court and the parties. The parties in the Polyester Polyol cases would be forced to start the class certification process virtually from the beginning, necessitating the expenditure of redundant costs and efforts. BASF, Dow, and Huntsman similarly point out that permitting the amendment would complicate and delay the litigation of both sets of cases. The parties in the Polyester Polyol cases should be ready to proceed with the class certification process in less than a month. The court sees no valid reason to halt the progress of the Polyester Polyol cases simply to allow the Polyester Polyol plaintiffs to gain control of a larger spectrum of products that are already part of the Polyether Polyol cases.

Accordingly, the Polyester Polyol plaintiffs' motion to amend is denied to the extent that they seek to amend their complaint to change the product definition. The court wishes to clarify that if at some point the evidence actually reveals that a broader price fixing conspiracy existed so as to warrant a greater level of consolidation between the two sets of cases, then the court would be willing to revisit this issue. The court will not, however, scrutinize any such proposed amendment under the generous amendment standards of *Foman* and its progeny as the Polyester Polyol plaintiffs have suggested the court should do. Rather, the issue would be governed by the court's discretionary power to manage this litigation efficiently by determining whether those claims should fall under the umbrella of the Polyester Polyol cases or the Polyether Polyol cases. The Polyester Polyol plaintiffs should therefore be prepared to persuade the court accordingly.

It appears that plaintiffs' request to add additional defendants is intertwined with their proposed expanded relevant product definition. Because the court is denying plaintiffs' motion to amend with respect to the revised product definition, then, the motion is also denied to the extent that they seek to add additional defendants based on the revised product definition. This aspect of the motion is, however, denied without prejudice to plaintiffs seeking leave to amend their complaint to name these additional defendants based on the original product definition if the court has misunderstood their position with respect to this issue.

The remaining portions of plaintiffs' motion to amend pertaining to their proposed expanded class period and their additional factual allegations are more akin to typical motions to amend because these allegations are not subsumed in the Polyether Polyol cases. As such, it appears that this aspect of plaintiffs' motion would be governed by the traditional standards governing motions to amend. But, as with plaintiffs' request to add additional defendants, it appears that these aspects of plaintiffs' proposed amendment are also intertwined with their proposed expanded relevant product definition and their request to add additional defendants, which the court has denied. For example, their fraudulent concealment allegations repeatedly refer to "Defendants and their co-conspirators." (Proposed First Amended Consol. Class Action Compl., ¶¶ 67–71, at 19–20.) Thus, it appears that plaintiffs are seeking to allege fraudulent concealment among Bayer, Chemtura, and all of the other companies that plaintiffs sought to add as defendants rather than alleging fraudulent concealment only as between Bayer and Chemtura. Also, some of their proposed additional factual allegations pertain to Bayer and Chemtura. Other allegations, however, pertain to Dow, BASF, and Huntsman. Of course, allegations against those defendants would be misplaced given the fact that the court is not granting plaintiffs leave

to add these additional defendants. Thus, the extent to which plaintiffs may still wish to amend their complaint to expand the class period and make additional factual allegations is not clear to the court. Accordingly, the court will deny these aspects of plaintiffs' motion to amend, but it will do so without prejudice to plaintiffs filing another motion to amend their complaint to raise these issues if they still wish to do so after reviewing the court's ruling regarding the other aspects of plaintiffs' proposed amended complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that the Polyester Plaintiffs' Motion for Leave to Amend Consolidated Complaint (Doc. 132) is denied, in part without prejudice, as set forth above.